May it please the Court. My name is Carla Kraus. I am representing Ms. Antolin Lorenzo-Lopez. I would like a minute for rebuttal time. This is a case involving Ms. Lopez's request for political asylum, withholding of removal, protection under the CAT. We also present an argument that there has been a pattern of persecution that would fall under 208.138 CFR, that there has been a pattern and practice of persecution in this case. The first issue I would like to discuss is the one year filing deadline. Ms. Lopez testified and her testimony was found credible. The one issue that the government has raised where they believe the court may not have jurisdiction is whether she was informed by an immigration officer that she could not apply for asylum. Our position is that the information was credible, that it is common based on case law objectively that many immigration officers do not want applicants to apply for asylum or be put in proceedings. The reason I brought up the Lopez-Venegas class action case is that was an action where the government was routinely encouraging applicants to apply for voluntary departure and leave the country, even though they were eligible for leave. Also take note of today of the resistance of people trying to enter this country to apply for asylum. Let me ask you a question. Even if we assume on the timing of this issue, the asylum application, that there's undisputed facts and that we have jurisdiction, let's just assume that there isn't. Isn't there a problem with the length of time that elapsed? There is a problem, Your Honor. Five years is a long time. Our case law says basically six months from the time it was due. That is a big issue. Basically we've stretched that. Well, the factors in this case... Isn't that a problem for you? It is a problem and it is an issue, but the factors in this case are very unique. First of all, Ms. Santoline, a transgender woman, is part of a vulnerable group of people that immediately was prejudiced when she entered the United States based on her status as a transgender female. I'm not sure how that helps you with the one-year bar. If anything, that should make her more sensitive to the fact she might be in a group that is entitled to different treatment. She didn't claim asylum for five years, not until after she was arrested and served with a notice. So it's hard to understand how those facts support the proposition that she came to the United States for asylum and promptly sought asylum. She didn't. Well, the other factors are that she is illiterate. She cannot read or write in the Spanish or English language. She has an accepted report claiming she suffers from PTSD, generalized anxiety, and depression. Well, that's a report. I mean, I read the psychologist's report. It basically is reporting what she told the psychologist. The psychologist doesn't make a diagnosis. So, I mean, the report simply says she presents a description that is consistent with certain conditions, but there's no testing that I could see. There's no reference to the psychologist herself opining as to your client's condition. It seems to be based entirely upon what your client told the psychologist. So how is it that the immigration authorities are compelled to believe those stories, compelled to believe your client's own diagnosis of herself? Well, it was a trained psychologist. I would hope that she wouldn't make things up for the court. Can you point to anything in the report that actually offers the opinion of the psychologist? I would have to review the report. Well, I did, and I didn't find such a diagnosis. I found something that reported these are consistent with these conditions. But why is that something the immigration court is required, is compelled to believe? Well, I believe in this case that the immigration court did believe. Well, can you point me to something? I mean, your brief says that it did, but I confess I didn't find anything in the disposition that mirrored the language used in the brief. Well, the immigration judge, we believe, held her to standard, to an incapacitated standard. And in this case. Well, that doesn't speak to the question I posed. You're trying to argue now that he used a different standard. And I might disagree as to that, too. But I'm still looking for an answer to the question of where is it that the immigration judge or the BIA accepted, concurred in the diagnosis that you've offered. Well, I know it was discussed, and I believe it was accepted as a credible report by the immigration judge. Let me ask you this. Let's say if you've got difficulties with timeliness on your asylum application, what do you think that does to the CAT claim? Well, CAT does not require filing within one year of time. Or the withholding claim. So she would remain eligible for withholding and CAT, Convention Against Torture. There's no one-year bar. And the immigration judge did go on to speak to those. So it's not the government's intentions he's ineligible. Excuse me. Remind me what the immigration judge said about the CAT claim. I believe on the CAT claim he stated that she could not meet. There was an issue about persecution, past persecution. Or past torture. Torture. CAT. I apologize. And she believed that the elements, the facts that she presented were not sufficient to find past torture. If she had a strong case for future torture, what would she have had to show in regards to past torture? Well, I don't believe she had to show anything in terms of future torture. And based on the objective evidence of the country conditions that are, again, outlined in Avendano, which I pointed out in my brief, bring us a number of cases that have come out of this court, have testified and demonstrated that the situation for the transgender population in Mexico is abysmal. Was that evidence before the immigration judge? There were country reports filed, State Department reports. I confess, I looked in your brief. I didn't find much in the way of evidence identified in the record for this case to support the proposition. Well, Your Honor, the case is five years old. But we consider the case that's in front of us. And that was the case in front of the IJ, in front of the BIA. And I'm asking, what in the record of this case supports the contention? I'm not listening for, at this point, for what other petitioners may have filed in other cases that may have led to other decisions by this court. In the administrative record, 207 to 235, there were reports filed regarding the conditions in Mexico, regarding treatment of the transgender population. I relied on the information in Avendano and Brindis to point out that this court has – Was any of that in front of the IJ for this case? Avendano came after, I believe. So it wasn't? No, it wasn't. So you're asking us to go outside the administrative record for this case. Do we have authority to do that? I am asking that you recognize objectively the situation as it is in Mexico. So there were some reports in the record? Yes. So what did they show? There was the U.S. State Department's country reports for 2011. There was the Harvard study. It demonstrates – There were some news articles. Yes. So what do they show in the record? It demonstrates that this population is, was, remains persecuted and harmed based on their status as transgender people, and it hasn't gotten better. But even then, in 2011, the reports indicate they were being harmed and persecuted based on the machista society in Mexico, based on the Catholicism, based on their vulnerability, and that continues to this day. All right. Why don't you save your time for rebuttal? All right. Thanks. Actually, we accidentally posted, put up 15 minutes. We were supposed to be 10, so we'll make sure that the government has adequate time to respond. May it please the Court, I am Don G. Scroggin on behalf of the United States Attorney General in this case. The Court should dismiss this case as to the asylum claim and deny the case as to withholding and CAT. The reason is that the record in this case simply does not compel reversal of the Board's decision. Well, let me ask you this. We took a very hard look, a very deep dive into the treatment of transgendered people in Mexico, in Eviando Hernandez, and Judge Lynn concluded as follows. It says, yet significant evidence suggests that transgender persons are often especially visible and vulnerable to harassment and persecution due to their own public nonconformance with normative gender roles. She wrote in an authoritative opinion for this Court. She went on to say, country conditions evidence shows that police specifically target the transgender community for extortion and sexual favors and that Mexico suffers from an epidemic of unsolved violent crimes against transgender persons. Indeed, Mexico has one of the highest documented number of transgender murders in the world. So this is a judge of this Court reaching these conclusions for a unanimous panel in an authoritative decision. How can the BAI ignore this? The BAI did not ignore that. The BIA decided the case not on the record in Avenando, but on the record in this case. This case contains only the executive summary of the country report, not the complete country report. But the BAI certainly is required to take notice of the applicable law, right? The applicable law of Avenando is, Avenando was decided after the immigration judge's decision in this case. The worst that could happen in this case is that this Court would remand to the board for consideration of Avenando. I would argue that's... I'm not just talking about reconsideration of the case. I'm talking about reconsideration of Judge Wynn's conclusion of what conditions were in Mexico. I mean, the argument the government is making seems to go along these lines. You know, we're back in, you know, the 1930s, and Jews are fleeing Munich and fleeing Nazi Germany. And the first four prove that there is virulent anti-Semitism in Germany, and it's documented and so forth. And then the fifth puts in a scarce record. A reasonable adjudicate of approach can't ignore that. But the Court in Avenando did not conclude there's a pattern in practice of persecution. Oh, certainly did. I just read to you what they said. That does not say the term pattern. You can dispute the reading, but that was my reading, and you're welcome to read it in a different way. No, I'm not reading it in a different way. I'm saying it's based on a different record, Your Honor. And second, that they do not use the term. The term pattern in practice appears nowhere in the case of Avenando, at least according to my searching of that case. That's true, Your Honor, and I don't minimize that. It doesn't speak to a practice? Many of those are for sex workers, and many of those are for activists. Petitioner, in this case, is neither of those. All I'm asking, Your Honor, is that this Court reject Petitioner's very plausible request that this Court reweigh the evidence. I would suggest, according to the Supreme Court, the statute, and this Court's controlling precedent. Well, let me ask you this. Even, you know, in light of Avenando, which the Board did not have. Correct. Correct. And in light of the record in this case, there is documented evidence in this case. I mean, there are country conditions reports, the Harvard study report. Correct. There's all of that. Shouldn't it at a minimum go back on the withholding claim? That's a possibility, Your Honor, but I would suggest this Court should reject Petitioner's request that the Court reweigh the evidence. In Avenando, there had been past torture. That alien had been brutally raped by police in military uniforms and separately by the military in uniforms. Here there's nothing of that. That was addressed separately by Judge Wynn. The paragraph that I read to you is this Court's analysis of the likelihood of future persecution. And I can't understand why the government would want to send this woman back in view of what we said the conditions were in Mexico for transgendered people. Judge Wynn wasn't whistling in the wind. No, Your Honor. This was a considered hard-hitting set of conclusions about Mexico. I don't think I ever read anything. You've got to search far and wide before you see language like this directed to other countries. I would not. Why does the government want to ask us to ignore this? Because of the law, Your Honor. The law is that this Court may not substitute its weighing of the evidence for the board's. The board reasonably did address the record in this case. The board weighed the psychologist's report. The board weighed the country reports. The board weighed the Harvard report and other evidence in the record and reached a reasonable conclusion based upon that evidence. According to the controlling precedence of this Court, that's the end of the case. The Court may not re-weigh the evidence, hoping that it can find evidence in the record. Your Honor, there's no suggestion that we – you may cast the petitioner's argument in that way, but we would have to say that substantial evidence just doesn't compel the conclusion that the board reached. That's not the test, Your Honor. The test, rather, is that the board's decision must be affirmed unless petitioner points to evidence so overwhelming that compels reversal of the board's decision. Evidence in light of Avendando, why doesn't it compel that result? Because it's based on a different record, and because it does not find, I would contend still, a pattern in practice of persecution or torture in Mexico. It found on the basis of those – the record in that case, which, as Judge Paez has already stated, cannot be imported wholesale into this case, that it found certain findings. They're all the same country. Mexico is Mexico. Respondent does not believe that it's totally safe in Mexico or the United States or indeed any country for transvestite, transgender people. We don't maintain that. That's not the question, whether we believe it's safe or not. The question is simply, was the evidence weighed? And here it was. Do you think she'd be a member of a disfavored group if she went back to Mexico? I don't know, Your Honor. There's no finding of that in the record. Well, I'm just asking you. I would suggest no, but that would be my speculation. Why not? Even in light of Judge Paez's – It's a hypothetical question about this case. I would suggest that – Do you think the record is insufficient to even show that transgender folks in Mexico are not part of a disfavored group? Well, I think we should look at the record in this case. What happened to Petitioner in her instance? She's been transgender her entire life, she says. Let's look at what happened to her, and that's why I keep focusing back on this case, which is what we're limited to. She had four instances of harm. The first, some bully pushed her in the eighth grade, and I'm sorry for that. Second, when she was in her 20s, a group of men propositioned her for sex, but she was rescued by her brother. Nothing happened. No rapes. Third, the third incident was that when she was drinking with a man at her brother's wedding, the man got drunk and propositioned her and grabbed her, but her brother rescued her. We're talking about future persecution, and as I read to you, Judge Winn for this court concluded that country conditions evidence show that police specifically target the transgender community. Epidemic of unsolved violent crimes in Mexico has one of the highest documented numbers of murders in the world. Why would our government want to send this woman back to those conditions? I'm just confused about it. The government is limited by the law, Your Honor, and the law does not allow every hard case to come into the United States. The law, Congress has determined that a petitioner has a burden to show certain conditions. Why doesn't simply citing this case carry the burden? Because if you look at the record, I would suggest, Your Honor, those murders and that harm is often directed first at sex workers, which is not petitioners. That's not what she says. That's not what we found. That's not what you found in terms of review of the record in Avendano? Judge Winn doesn't mention sex workers. She's quite specific about what is going on in Mexico. Well, that's consistent. What you're doing is you're inviting us to embarrass this court. That's what you're doing because in order to rule in your favor, we would have to walk away from Judge Winn's opinion, which calls into question, in my mind, the legitimacy of this bench. I mean, you may like it, but it causes me pause. Your Honor, I'm taken aback by your comment that I may like it. Respondent has no position that this is a hard-hearted case for the government. This is a matter of what the law allows. If that were true, if the court does reach that decision, I would suggest the only action the court should take is to remand to the board for consideration in light of Avendano, which is intervening law. However, I would say that that's not necessary in this case in light of what happened to Petitioner, which is essentially no harm in light of her own evidence in this case, which is that – Well, there's no dispute that she's transgender, right? No dispute according to the record, Your Honor. And so the government therefore requests, at worst case, that the court remand in light of Avendano. We don't think that's necessary here because the record doesn't compel that answer. Again, I would say Avendano did not find a pattern in practice. It doesn't use that term. That's a term of art that I'm sure the court was well aware of. Would you say that Avendano placed her in a disfavored group? That would be speculation, Your Honor. I think it depends upon the record in multiple cases, and I can't speak to that. Perhaps a non-bond court in this court could.  Thank you, Counsel. Ms. Lopez was harmed. Whether it amounts to persecution, that's something that we're arguing today. But the main issue I want to point out is to return her to Mexico would cause future persecution. How do we know that? Based on the – Given what's happened to her already, if we don't conclude that these people were harmed, if the evidence compels the conclusion that it was persecution, how do we know that what will happen in the future will be worse? I don't know for sure. But how can we say the evidence compels that conclusion? Because of her status as a transgender person, because of the language in various cases. She's been a transgender person her whole life, correct? Luckily, she's been having the safety of the U.S. to protect herself. Well, she's coming in with a claim that she was persecuted in Mexico. But if we don't conclude that those episodes rise to the level of persecution, then what compels the conclusion that back in Mexico it will be worse than it was for her before? Because the situation in Mexico has gotten worse. And what evidence is there on the record for that? Again, I point to the – You've pointed generically to reports but haven't pointed to specifics. And when I look at specifics, I find descriptions saying conditions are improving in Mexico, just as they've improved in the United States. There was a change in law in Mexico, which actually caused a backlash against the gay transgender population. I am focusing on transgender here. They are simply not accepted in Mexico. And what in the record compels that conclusion? Well, if you look at, again, Avendano, Gringas, it's case law. It's not in the record. I'm asking you what in the record compels the conclusion, and you have yet to give me a specific answer. Well, the country reports that were filed. What? With the immigration. I've looked at those. The agency concluded that didn't compel a conclusion, and I haven't seen anything that compels the conclusion. I might well have reached a different result myself. But I'm kind of frustrated hearing from you these generic references. What I found in there is a map, for example, of where transgender persons have been murdered. And it's all over the world, with probably a bigger number in the United States than in Mexico. I mean, nobody has a record to be proud of here. But what tells us that Mexico is so much worse for her? The data that points out that it is the second country responsible for the murder of transgender behind Brazil, that there is an influx of cases of transgender people coming to the U.S., and rarely do they make it to this court, because I represent a lot of transgender people, and normally they're granted by the immigration judge, especially after Avendano and Bringas. So right now we have a case that is old, five years old, and it's difficult to update it within these five years without going outside the record. But you have to take note of Avendano and Bringas and the cases that have come out since that time. And finally, I do see a pattern in practice here, and a disfavored group where transgenders are singled out individually in Mexico, and that they are discriminated against. And the disfavored group doesn't have to have that level of persecution as a group. So I do see that she falls into a pattern of practice or a disfavored group. Thank you. We appreciate your arguments, counsel. Thank you both. Very helpful arguments.
judges: Parker, Paez, Clifton